**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Galas, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>The Lending Company, Inc., et al.,<br><br>Defendants. | No. CV-12-01265-PHX-DGC<br><br>**ORDER** |

On November 6, 2012, Margaret Galas filed an amended class action complaint variously alleging eight causes of action against The Lending Company, Inc. ("TLC") and its executives and their spouses, several Arizona non-profit organizations ("the charities"), Franklin American Mortgage Company ("FAMC"), and unidentified Investor Mortgagees. Doc. 35. FAMC filed a motion to dismiss and a motion to stay on September 20, 2012. Docs. 41-42. On October 9, 2012, TLC and its executives filed a motion to dismiss all claims against the executives and counts three, six, and seven against TLC (Doc. 45), and on October 29, 2012, Family Housing Resources Inc. ("FHR"), one of the charities, filed a notice of joinder in TLC's motion to dismiss (Doc. 66). All motions have been fully briefed. Docs. 46, 63, 71, 77, 78, 80, 88. For the reasons that follow, the Court will grant in part and deny in part TLC's motion to dismiss, grant FAMC's motion to dismiss, and deny as moot FAMC's motion to stay.[1]

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b).

## I. Background.

In order for a mortgage to qualify for Federal Housing Administration ("FHA") insurance, the borrower must make a down payment of at least 3.5%. 12 U.S.C. § 1709(b)(9). To enable borrowers to satisfy that requirement without providing the full 3.5%, TLC offered a "1% down" program. Doc. 45 at 3. The program required borrowers to provide a 1% down payment, after which they would receive a "gift" of the additional 2.5% from a charitable organization. Doc. 45 at 3.

In May 2010, Plaintiff Margaret Galas applied for and obtained an FHA insured mortgage loan from TLC in the amount of $132,554 through the 1% down program. Doc. 35 ¶ 116; Doc. 45 at 3. Galas provided 1% of the down payment and received a gift of the additional 2.5%, or a total of $3,375, from the charitable organization Family Housing Resources ("FHR"). Doc. 45 at 3.

Galas claims that she was charged a higher interest rate than she would have been had she not participated in the 1% down program. That interest rate, she claims, was elevated so that the mortgage could be sold as a "premium" mortgage on the secondary market and the additional proceeds of that sale used to repay the 2.5% gift along with an "administrative fee." Doc. 35 ¶ 4-5. Galas alleges that while she was promised a "gift," she and other 1% down borrowers are actually paying for the gift through an increased interest rate, and that Defendants misrepresented the terms of the loan. Doc. 35 ¶ 119-25.

Galas asserts eight causes of action against various Defendants related to the manner in which she received her loan. Doc. 35 at 28-43. The first two claims assert violations of portions of the Real Estate Settlement Procedures Act ("RESPA"). 12 U.S.C. § 2607(a) & (b). Claims three and four allege conspiracy and enterprise liability violations of the Racketeer Influence and corrupt Organization Act ("RICO"). 18 U.S.C. § 1962(c) & (d). The fifth claim alleges a violation of the Arizona Consumer Fraud Act. A.R.S. § 44-1522. The sixth and seventh claims allege common law claims of fraudulent misrepresentation and omission and breach of contract. The eighth cause of action seeks declaratory and injunctive relief.

## II. Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and they are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. Analysis.

### A. TLC's Motion.

TLC and its executives move to dismiss counts six (fraudulent misrepresentation or omission) and seven (breach of contract) against TLC and all counts against the company's executives. Doc. 45 at 2. They argue that the RICO, fraud, and breach of contract claims are merely a recasting of the RESPA violations alleged in counts one and two (which they do not move to dismiss), and that the fraud claim has not been pled with sufficient particularity under Rule 9(b). They further argue that all claims against the executives must be dismissed because Galas has failed to identify actions by the executives that would warrant individual liability.

Galas does not contest the dismissal of claim seven for breach of contract. Doc. 71 at 32. She maintains, however, that the additional claims are not merely derivative of the RESPA violations and that the individual executives should be liable because they devised and implemented the loan program. Doc. 35 ¶ 173.

#### 1. Defendant TLC.

Defendants assert that Plaintiff's fraud-based claims in the third cause of action for RICO and the sixth cause of action for fraud do not satisfy the Rule 9(b) requirement that a plaintiff must "state with particularity the circumstances constituting fraud." Fed. R.

1  Civ. P. 9(b). Although the fifth cause of action – violation of the Arizona Consumer
2  Fraud Act – is also asserted against TLC and is based on the same fraudulent acts, TLC
3  expressly acknowledges that it does not move to dismiss that claim for lack of specificity.
4  Doc. 88 at 6, n. 2. The Court will address whether Plaintiff's factual allegations of fraud
5  that underlie claims three and six are specific enough to satisfy Rule 9(b).

6        A common law fraud claim in Arizona has nine elements: (1) a representation,
7  (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of
8  its truth, (5) intent that it should be acted upon, (6) the hearer's ignorance of its falsity,
9  (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and
10 proximate injury. *Fridenmaker v. Valley Nat. Bank of Arizona*, 534 P.2d 1064, 1067
11 (1975). Galas alleges that TLC said she would receive a "gift" from a charity of 2.5% of
12 the purchase price. She alleges that the cost of that gift was actually passed along to her
13 through a higher interest rate. Doc. 35 ¶ 159. She alleges that TLC advertised the 1%
14 down program, evidencing its intent that borrowers rely on its promise of securing a 2.5%
15 gift for them, while it actually intended that the gift would be repaid through proceeds
16 derived from increasing the interest rate and selling the premium loans on the secondary
17 market. Doc. 35 ¶¶ 191, 193-96.

18       These facts sufficiently identify the fraud allegedly committed by TLC. The Court
19 will deny TLC's motion to dismiss claims three and six for failure to comply with
20 Rule 9(b). Galas also briefs the legal theories of fraud by concealment and omission, but
21 the Court need not consider additional legal theories in support of the same claims.

22       **2.**    **Defendant Executives.**

23       Galas asserts five claims against TLC Executives (claims 1-3, 5-6). Defendants
24 argue that Galas "does not assert any facts or legal theories under which these individuals
25 could be held liable." Doc. 45 at 4.

26       "A corporate officer or director is, in general personally liable for all torts which
27 he authorizes or directs or in which he participates, and notwithstanding that he acted as
28 an agent of the corporation." *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d

- 4 -

1001, 1021 (9th Cir. 1985). Thus, where a plaintiff alleges that an officer authorized, directed, or participated in a corporation's tort or statutory violation, he can be personally liable. *See United States v. Reis*, 366 Fed. Appx. 781, 782 (9th Cir. 2010) (finding personal liability where an officer was an actual participant in the acts giving rise to corporate liability under the Resource Conservation and Recovery Act); *Dish Network, LLC v. Sonicview USA, Inc.*, No. 09-CV-1533, 2012 WL 1965279 *11 (S.D. Cal.), *reconsideration denied*, 2012 WL 4339047 (finding personal liability for corporate officers who were "guiding spirits" of corporations statutory violations).

To adequately allege individual liability for TLC executives in the alleged RESPA violations, Galas need only satisfy the pleading requirements in Rule 8. Galas alleges that the executives devised the 1% down program and "approved and directed" the corporate actions that form the basis of the RESPA claims. Doc. 35 ¶¶ 156, 163, 173. Specifically, the complaint contains allegations that as CEO and Chairman Nickel conceived of the 1% down program and ran it on a daily basis. Doc. 35 ¶ 17. Reynolds and Johnson are alleged to have participated in running the loan program (Doc. 35 ¶¶ 19, 21) and Reynolds is alleged to be responsible for selling the loans on the secondary market (Doc. 35 ¶¶ 21, 65). Galas also references an email from Reynolds to Nickel and Johnson informing them that TLC "fall[s] into the 'or any party that financially benefits from the transactions'" category and suggesting that they should "consider getting rid of the gift program after all." Doc. 35-6 at 2. Galas also references a letter to Reynolds from GMAC Bank informing him that GMAC would not participate in the program because they believed the charitable gift was ultimately paid by the lender, an improper source of funds. Doc. 35-5 at 2. These facts are sufficient to sustain a claim for personal liability against the named officers for their parts in the alleged RESPA violations.

With respect to the fraud claims (claims 5-6) and the RICO claim that asserts an underlying predicate act of fraud, Plaintiff must satisfy the heightened pleading standard of Rule 9(b). The Court has already found that Plaintiff adequately pled a claim for fraud against TLC. Under Arizona law, corporate officers and directors are not personally

liable for a corporation's torts "merely by virtue of the office they hold," *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841, 846 (D. Ariz. 2009), but they are personally liable when they either participated in the fraud or had knowledge of it that "amount[s] to acquiescence." *Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Euip. Contractors Co.*, 700 P.2d 902, 908 (App. 1985).

Galas has alleged that the Executive Defendants knew about and personally participated in the corporate conduct as noted above. The Court concludes that Galas has sufficiently alleged that the named officers either acquiesced or participated in the fraud. The Court will deny the motion to dismiss all claims against the corporate officers.

### 3. RICO Claims.

"Courts have rejected RICO claims when a plaintiff attempts to reformulate conduct as mail fraud when it would otherwise not be fraudulent in the absence of a statutory violation that is not defined as racketeering activity under RICO." *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1116 (D. Ariz. 2010); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (rejecting a RICO claim when the predicate act consisted only of alleged violations of copyright laws). Defendants move to dismiss the RICO claims because the RICO allegations merely rehash the underlying RESPA claims. They argue that RESPA claims, like the underlying copyright violations in *Smith*, cannot qualify as a predicate act under RICO.

*Johnson* distinguished *Smith*, holding that "while RESPA violations do not constitute racketeering activity, 18 U.S.C. § 1961(1), a person can engage in mail fraud based on fraudulent appraisals without the operation of RESPA." *Johnson*, 720 F. Supp. 2d at 1116. Galas has adequately alleged both statutory and common law fraud claims, and further alleges that the fraud was performed through mail and over wires. Galas need not rely on RESPA claims where she has alleged conduct that could establish mail fraud absent a RESPA violation. The Court will deny the motion to dismiss the RICO claims.

### B. Notice of Joinder.

Defendant FHR, one of the alleged gift-giving charities, filed a notice of joinder in

1 TLC's motion to dismiss with respect to claims three, six, and seven. Doc. 61. Galas opposed the joinder in responsive briefing because FHR filed an answer before filing the notice of joinder in the motion to dismiss. Doc. 77. Because the Court has rejected the motion to dismiss with respect to claims three and six and claim seven has been dismissed in its entirety, FHR's joinder in the motion is moot.

### C. FAMC's Motion.

FAMC purchases mortgages on secondary markets. Doc. 41 at 4. Galas alleges that an integral part of the fraudulent scheme was raising interest rates on the 1% down mortgages so that they could be resold on the secondary market as premium mortgages. Galas alleges that TLC sold these loans to numerous investors and entities, but she does not allege that FAMC purchased her mortgage. Because Galas does not allege that FAMC had any dealings directly with her, FAMC argues that there is no case or controversy between them and moves to dismiss all claims against it under Rule 12(b)(1). *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

Galas responds that she need not allege that FAMC was the entity that purchased her loan because she has alleged that FAMC is a co-conspirator with TLC and other defendants and the conspiracy proximately caused her loss. She argues that transferring standing to a co-conspirator is similar to transferring standing to a claim's assignee, as authorized by the holding in *Sprint Communications Co., L.P. v. APCC services, Inc.*, 554 U.S. 269, 274 (2008). Galas maintains that FAMC participated in the conspiracy by continuing to purchase the premium mortgages and enabling the conspiracy to continue even after receipt of a letter exposing the fraud from a whistleblower employee of TLC. Doc. 35 ¶¶ 98-103, 184, 208. Galas cites *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768 (9th Cir. 2002), in which the Ninth Circuit acknowledged potential joint liability on the part of a defendant who was an alleged RICO co-conspirator that laundered proceeds of stolen semiconductors. Galas argues that the same type of co-conspirator liability should lie against FAMC in this case.

The Court has found that Galas has adequately pled a RICO claim. FAMC's

alleged involvement in the conspiracy arose when it continued to purchase the premium mortgages despite knowledge of improprieties with the charitable gift and the interest rates. Galas alleges that FAMC knew about the improprieties after it received a whistleblower's letter. Doc. 35 ¶ 184. Galas does not allege, however, that that letter was received before her mortgage had been sold on the secondary market. Doc. 35 ¶¶ 96-111. Even if FAMC was a RICO co-conspirator after the receipt of the letter, Galas has not adequately alleged that it was part of the conspiracy when she suffered her loss. Galas has not alleged a causal relationship between any of FMAC's actions and the harm she allegedly suffered by paying a higher interest rate. As a result, all claims against FMAC will be dismissed. FAMC's motion to stay pending consideration of its motion to dismiss (Doc. 42) will be denied as moot.

**IT IS ORDERED:**

1. TLC's motion to dismiss (Doc. 45) is **granted in part and denied in part.** Claim seven for breach of contract is dismissed.

2. FAMC's motion to dismiss (Doc. 41) is **granted.**

3. FAMC's motion to stay (Doc. 42) is **denied as moot.**

Dated this 25th day of January, 2013.

_David G. Campbell_
David G. Campbell
United States District Judge